UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


GLENN HEGGIE,

        Plaintiff,                          Hon. Richard Alan Enslen

v.                                                 Case No. 1:07 CV 1024

MICHIGAN DEPARTMENT
OF CORRECTIONS, et al.,

        Defendants.
_____/


## REPORT AND RECOMMENDATION

        This matter is before the Court on <u>Defendants Correctional Medical Services, Inc.; George Kuzma, M.D.; Sarah Hope Heebsh, P.A.; Jason Y. Kim, M.D.; and Daniel Spitters, P.A.'s Motion to Dismiss Pursuant to Fed. R. Civ. 12(b)(6)</u>. (Dkt. #41). Pursuant to 28 U.S.C. § 636(b)(1)(B), the Court recommends that Defendants' motion be **denied**.


## BACKGROUND

        The following allegations are contained in Plaintiff's complaint. On or about March 1, 2006, Plaintiff arrived at the Michigan Department of Corrections Receiving and Guidance Center, in Jackson, Michigan, to begin serving his sentence. Upon his arrival, Plaintiff informed medical personnel that he had begun to suffer seizures "in the last several months." Plaintiff was assigned a bottom bunk and instructed to request a bottom bunk "when he transferred to another facility."

On or about April 5, 2006, Plaintiff was transferred to the Lakeland Correctional Facility (LCF). Upon his arrival at LCF, Plaintiff was examined by Defendant Hobbs. Plaintiff informed Hobbs "that he needed a bottom bunk because he has seizures." After reviewing Plaintiff's medical records, Hobbs "made arrangements and a bottom bunk was issued to" Plaintiff.

The following day, however, Plaintiff was moved to a different housing unit within LCF where he was assigned a top bunk. Plaintiff reported to Defendant Brecheisen that he required a bottom bunk because he suffers seizures. Brecheisen told Plaintiff that "he would call health service" about the matter. Over the "next couple of days," Brecheisen made "several phone calls" to LCF health services, which informed Brecheisen that "they will look into it and call back." Health services never called back, however, and Plaintiff was forced to sleep in a top bunk.

On or about May 20, 2006, Plaintiff suffered a seizure and fell out of his top bunk, injuring his head, neck, and back. Plaintiff was taken to a hospital where x-rays were taken. After returning to LCF, he was examined by Defendants Hobbs and Heebsh. Defendant Heebsh observed that Plaintiff's eyes "were extremely dilated," a sign of head trauma. Heebsh told Plaintiff that she would order an MRI examination. However, rather than order an MRI examination, Defendant Heebsh "ordered chest x-rays."

For "the next month or so," Plaintiff "complained to several (LCF) health service staff members" (including Defendants Kuzma, Hobbs, Heebsh, and Leas) that he was experiencing "extreme back pain and discomfort, head aches, and dizzy spells." Despite his numerous requests to obtain medical treatment, "(LCF) health service" refused to provide Plaintiff "with any further exams to find the cause of his pain and suffering." Plaintiff was also not provided with "any effective relief" from his pain. At an unspecified date, Plaintiff participated in a urine test, the results of which revealed the

presence of blood. Defendant Kuzma informed Plaintiff that such could have resulted from injuries suffered in his May 20, 2006 fall out of bed.

On or about June 19, 2006, Plaintiff was transferred to the Muskegon Correctional Facility (MCF). After arriving at MCF, Plaintiff complained to "(MCF) health service" (including Defendants Kim, Meyer, Hamilton, Cooper, and Spitters) that he was experiencing "chronic and persistent back pain," as well as "headaches, dizzy spells and many other neurological problems to the extent that at times the plaintiff would sometimes briefly forget who and where he was." Despite his many complaints, "(MCF) health service" has refused to treat Plaintiff's pain or provide him with any medical testing.

Plaintiff initiated this action on October 10, 2007, against number individuals, as well as the Michigan Department of Corrections (MDOC) and Correctional Medical Services (CMS). Plaintiff alleges that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. Simply put, Plaintiff asserts that after suffering a seizure and falling from his bed on May 20, 2006, Defendants have not provided him with appropriate medical treatment. Plaintiff seeks declaratory, injunctive, and monetary relief. Defendants CMS, Kuzma, Heebsh, Kim, and Spitters (hereinafter referred to collectively as the "moving Defendants") now move for summary judgment on the ground that Plaintiff has failed to properly exhaust his claims against them. For the reasons discussed below, the Court recommends that Defendants' motion be denied.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED.

R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the

party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.        Exhaustion Standard**

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 127 S.Ct. 910, 921 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 126 S.Ct. 2378, 2386-87 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 127 S.Ct. at 922-23.

When assessing whether a prisoner has properly exhausted his claims as required by the PLRA, it is appropriate to seek guidance from the substantively similar exhaustion rules applicable to petitions for writ of habeas corpus. *See Woodford,* 126 S.Ct. at 2384. In the habeas context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). To "'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies." *Id.* at 848 (citation omitted). In the habeas context, "the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default." *Woodford,* 126 S.Ct. at 2387. To determine whether a habeas petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir.2004), *cert. denied,* 544 U.S. 928 (2005); *accord Lancaster v. Adams,* 324 F.3d 423, 436-37 (6th Cir.2003).

Under the procedural default component of § 1997e(a), an inmate's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows,* 418 F.3 d 1152, 1159 (11th Cir.2005), *cert. denied,* 126 S.Ct. 2978 (2006); *Spruill v. Gillis,* 372 F.3d 218, 222 (3rd Cir.2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is

made by evaluating the prisoner's compliance with the prison's administrative regulations"). Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the United States Constitution or the intended purposes of § 1997e(a). *See Spruill,* 372 F.3d at 232.

Defendants have submitted copies of five grievances that Plaintiff filed between June and November 2006. Plaintiff has neither argued nor presented evidence that he pursued any other grievances relative to the claims asserted in his complaint. The Court shall, therefore, examine these grievances to determine which (if any) claims in Plaintiff's complaint have been properly exhausted.

**II.        Relevant Grievance Policy**

Michigan Department of Corrections Policy Directive 03.02.130 (eff. Dec. 19, 2003)[1] sets forth the applicable grievance procedures for prisoners in MDOC custody. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue. *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process, and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ R, X. The policy provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the

---

[1] The MDOC subsequently amended the Grievance Policy in 2007. However, the 2003 version of the policy directive was in effect at all times applicable to this lawsuit.

issue being grieved are to be included." *Id.* at ¶ T.  The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R, DD.  The respondent at Step II is designated by the policy, e.g., the regional health administrator for a medical care grievance. *Id.* at ¶ FF. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ HH.  The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.  Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ U. The "total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved." *Id.*

**III.**      **Analysis of Plaintiff's Grievances**

   A.   Grievance LCF-2006-06-0491-12i

Plaintiff filed this grievance on June 10, 2006.  (Dkt. #41, Exhibit B).  In this grievance Plaintiff asserted that "about a month ago" he suffered a seizure and "fell out of [his] bed," injuring his neck and back.  Plaintiff asserted that "health care" was not providing him with adequate medical treatment for his injuries.  Plaintiff pursued this grievance through all three steps of the grievance process.

Defendants claim that this grievance is not properly exhausted for two reasons. Defendants first assert that the grievance is "clearly very untimely." As previously noted, the failure to comply with this (or any other) procedural requirement constitutes a failure to properly exhaust only if prison officials reject the grievance *because of* the prisoner's failure to comply with the procedural requirement in question. This particular grievance was not rejected as untimely, but was instead rejected on the merits.

Defendants next assert that this grievance is not properly exhausted because Plaintiff failed to identify therein any of the moving Defendants by name. The Court recognizes that MDOC policy requires prisoners to include in their grievances the "names of all those involved in the issue being grieved." Again, there is no evidence that prison officials rejected this grievance because of any alleged failure on Plaintiff's part to identify the "names of all those involved in the issue being grieved."

Plaintiff's step one grievance was asserted against "health care." The Court finds this language is more than sufficient to put on notice any and all individuals and entities involved with providing health care to prisoners at LCF. In the absence of evidence establishing which of the moving Defendants (all of whom allegedly are health care providers) were responsible for providing health care to Plaintiff during the relevant time period, the Court finds that this grievance sufficiently implicates all of the moving Defendants. The Court further notes that in his step two grievance appeal, Plaintiff stated that he was unable to identify by name the various individuals and/or entities responsible for his alleged mistreatment because prison officials refused to provide him with that information. The Court refuses to interpret the PLRA so as to immunize prison officials from liability when they refuse to provide a prisoner with relevant information necessary to "properly" pursue a grievance.

The Court concludes, therefore, that Plaintiff has properly grieved his claim that from May 20, 2006, through June 10, 2006, the moving Defendants failed to provide Plaintiff with necessary and appropriate medical care. The Court recognizes that certain Defendants may be able to establish that they were not involved with providing health care to Plaintiff during this time period. However, such are substantive matters beyond the scope of the present motions to dismiss for failure to properly exhaust administrative remedies.

### B.   Grievance LCF-2006-07-0599-28a

Plaintiff filed this grievance on July 19, 2006. (Dkt. #41, Exhibit C). In this grievance, Plaintiff asserts that Defendants Hobbs and Heebsh failed to provide him with adequate medical care after falling out of his bed on May 20, 2006. This grievance was rejected as duplicative of grievance LCF-2006-06-0491-12i. This grievance was not pursued in accordance with the MDOC's established guidelines. Moreover, it asserts the same claims as were asserted in grievance LCF-2006-06-0491-12i. Thus, as to whether Plaintiff has properly exhausted the claims in his complaint, this particular grievance does not further Plaintiff's cause.

### C.   Grievance LCF-2006-07-0598-28a

Plaintiff filed this grievance on July 19, 2006. (Dkt. #41, Exhibit D). Plaintiff filed this grievance in response to the denial at Step I of grievance LCF-2006-06-0491-12i, asserting that the basis for the denial of grievance LCF-2006-06-0491-12i was inaccurate and constituted a violation of MDOC policy. This grievance was rejected as duplicative of grievance LCF-2006-06-0491-12i. This grievance was not pursued in accordance with the MDOC's established guidelines. Moreover, aside from

implicating the allegations asserted in grievance LCF-2006-06-0491-12i, this particular grievance does not implicate any additional claims asserted in Plaintiff's complaint. Thus, this grievance does not serve to exhaust any of the claims asserted in Plaintiff's complaint.

### D.   Grievance MCF-06-11-00871-12z

Plaintiff filed this grievance on November 26, 2006. (Dkt. #41, Exhibit E). In this grievance, Plaintiff asserts that he was transferred to MCF on June 19, 2006, after which he was denied appropriate medical treatment for the injuries he suffered after falling out of his bed on May 20, 2006. Plaintiff asserted this grievance against "health service" and four individuals (including Defendants Kim and Whalen).

Defendants assert that this grievance is not properly exhausted because it is untimely and impermissibly vague. Again, while the grievance may not have been timely, it was not rejected on that basis. Accordingly, the fact that the grievance was allegedly untimely is irrelevant. As for whether this grievance is vague, the Court notes that the grievance was not rejected on that basis. Defendants also assert that this grievance is not properly exhausted against Defendants CMS, Kuzma, Heebsh, or Spitters because Plaintiff failed to identify them by name in this grievance.

While Plaintiff's Step I grievance identifies four individuals, in the body of the grievance Plaintiff asserts that it is "health care" that refuses to provide him with adequate health care. The Court finds this language is more than sufficient to put on notice any and all individuals and entities involved with providing health care to prisoners at MCF. In the absence of evidence establishing which of the moving Defendants (all of whom allegedly are health care providers) were responsible for providing

health care to Plaintiff during the relevant time period, the Court finds that this grievance sufficiently implicates all of the moving Defendants.

The Court concludes, therefore, that Plaintiff has properly grieved his claim that from June 19, 2006, through November 26, 2006, the moving Defendants failed to provide Plaintiff with necessary and appropriate medical care. The Court recognizes that certain Defendants may be able to establish that they were not involved with providing health care to Plaintiff during this time period. However, such are substantive matters beyond the scope of the present motions to dismiss for failure to properly exhaust administrative remedies.

E.     Grievance MCF-06-08-00586-12f

Plaintiff filed this grievance on August 8, 2006. (Dkt. #41, Exhibit F). In this grievance, Plaintiff asserts that he was not receiving adequate medical treatment for the injuries he suffered after falling out of his bed on May 20, 2006. Plaintiff did not identify any person or entity by name in this grievance, but instead asserted that unidentified doctors, nurses, and physician's assistants were not providing him with proper medical care. Plaintiff pursued this grievance through all three steps of the grievance process.

Defendants claim that this grievance is not properly exhausted for two reasons. Defendants first assert that the grievance is "very untimely." Again, the failure to comply with this (or any other) procedural requirement constitutes a failure to properly exhaust only if prison officials reject the grievance *because of* the prisoner's failure to comply with the procedural requirement in question. This particular grievance was not rejected as untimely, but was instead rejected on the merits.

Defendants next assert that this grievance is not properly exhausted because Plaintiff failed to identify any of the moving Defendants by name in this grievance. While the Court recognizes that MDOC policy requires prisoners to include in their grievances the "names of all those involved in the issue being grieved," there is no evidence that prison officials rejected this grievance because of any alleged failure on Plaintiff's part to identify the "names of all those involved in the issue being grieved."

While Plaintiff's Step I grievance did not identify by name any individual or entity, Plaintiff clearly asserted that unidentified doctors, nurses, and physician's assistants were not providing him with proper medical care. The Court finds this language is more than sufficient to put on notice any and all individuals and entities involved with providing health care to prisoners at MCF. In the absence of evidence establishing which of the moving Defendants (all of whom allegedly are health care providers) were responsible for providing health care to Plaintiff during the relevant time period, the Court finds that this grievance sufficiently implicates all of the moving Defendants. The Court further notes that in his step two grievance appeal, Plaintiff stated that he had "requested the names and numbers" of the "MCF health service staff," but that such information was not provided to him. The Court reiterates that it refuses to interpret the PLRA so as to immunize prison officials from liability when they refuse to provide a prisoner with relevant information necessary to "properly" pursue a grievance.

The Court concludes, therefore, that this grievance serves to properly exhaust Plaintiff's claim that from June 19, 2006 (the date he transferred to MCF), through August 8, 2006, the moving Defendants failed to provide Plaintiff with necessary and appropriate medical care. The Court recognizes that certain Defendants may be able to subsequently establish that they were not involved with providing health care to Plaintiff during this time period. However, such are substantive matters

beyond the scope of the present motions to dismiss for failure to properly exhaust administrative remedies.

## CONCLUSION

For the reasons articulated herein, the Court concludes that Plaintiff has properly exhausted his claims that from May 20, 2006, through November 26, 2006, Defendants CMS, Kuzma, Heebsh, Kim, and Spitters denied him appropriate medical care to treat the injuries he suffered on May 20, 2006. Accordingly, the Court recommends that <u>Defendants Correctional Medical Services, Inc.; George Kuzma, M.D.; Sarah Hope Heebsh, P.A.; Jason Y. Kim, M.D.; and Daniel Spitters, P.A.'s Motion to Dismiss Pursuant to Fed. R. Civ. 12(b)(6)</u>, (dkt. #41), be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: November 26, 2008          /s/ Ellen S. Carmody
                                 ELLEN S. CARMODY
                                 United States Magistrate Judge