UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |
|---|---|
| GLENN HEGGIE, | Case No. 1:07-cv-1024 |
| Plaintiff, | HONORABLE PAUL L. MALONEY |
| v. | Magistrate Judge Carmody |
| GEORGE KUZMA, in individual & official capacities, UNKNOWN HEEBSH, in individual & official capacities, UNKNOWN HOBBS, in individual & official capacities, JASON Y. KIM, in individual & official capacities, UNKNOWN SPITTERS, individual & official capacities, | |
| Defendants. | |

## Opinion and Order

**Overruling the Plaintiff's Objections;
Overruling the CMS Defendants' Objections;
Adopting the R&R;**

**Granting in Part & Denying in Part the CMS Defendants' Motion to Dismiss;
Granting in Part & Denying in Part the MDOC Defendants' Motion for Summary Judgment;**

**Dismissing All Defendants Except Kuzma, Heebsh, Kim, Spitters and Hobbs**

According to the complaint, plaintiff Glenn Heggie ("Heggie") arrived at the Michigan Department of Corrections ("MDOC") Receiving and Guidance Center on March 1, 2006, and informed medical personnel that he had begun to suffer seizures "in the last several months", whereupon they assigned him to a ground-level bunk and told to also request a ground-level bunk when he was transferred to another facility. On April 5, 2006, Heggie was transferred to the

Lakeland Correctional Facility ("LCF"); defendant Hobbs examined Heggie and honored his request for a bottom bunk due to his reported seizures, but the next day Heggie was moved to a different unit and assigned a top bunk. Heggie complained to defendant Brecheisen, who called LCF Health Services several times over several days and received no meaningful response.

Heggie remained sleeping in a top bunk, and on May 20, 2006, he suffered a seizure and fell out of bed, injuring his head, neck and back. Heggie was X-rayed and examined by defendants Hobbs and Sarah Hope Heebsh, P.A. ("PA Heebsh"). Heebsh observed that Heggie's pupils were extremely dilated, which she took to be a sign of head trauma, and she promised to order an MRI (magnetic resonance imaging) scan, but instead ordered only chest X-rays. For about a month, Heggie complained to LCF staff, including George Kuzma, M.D. ("Dr. Kuzma"), Hobbs, PA Heebsh, and Leas, that he was experiencing severe back pain, headaches and dizzy spells, but they refused to provide further examinations or tests. On an unspecified date during this period, Heggie took a urine test which revealed blood in the urine, which Dr. Kuzma told him could have resulted from injuries suffered in the May 20, 2006 fall out of the top bunk.

In June 2006, Heggie was transferred to Muskegon Correctional Facility ("MCF"), immediately told the MCF Health Service – including Hamilton, Cooper, Meyer, Jason Y. Kim, M.D. ("Dr. Kim"), and Physician's Assistant Daniel Spitters ("PA Spitters") – that he had persistent chronic back pain, headaches, dizzy spells, and other neurological problems that sometimes caused him to forget who he was and where he was, but they refused to provide any medical tests or pain treatment.

In October 2007, Heggie sued the Michigan Department of Corrections ("MDOC"), Correctional Medical Services ("CMS"), and numerous employees thereof (collectively "the CMS

defendants"), contending that their refusal to provide appropriate medical treatment for his known serious conditions violated his Eighth Amendment to be free of cruel and unusual punishment. Defendants CMS, Dr. Kuzma, Dr. Kim, PA Heebsh, and PA Spitters moved for summary judgment on the ground that Heggie failed to exhaust his administrative remedies on his claims against them.

Pursuant to 28 U.S.C. § 636 and W.D. MICH. LCIVR 72.2(b), the matter was automatically referred to United States Magistrate Judge Ellen S. Carmody, who issued a Report and Recommendation ("the first R&R") in November 2008. In December 2008, defendants CMS, Dr. Kuzma, Dr. Kim, PA Heebsh, and PA Spitters timely filed objections to the first R&R.

By opinion issued in January 2009, this court sustained the defendants' objections in part and overruled them in part. Namely, the court agreed with the Magistrate Judge that failure to exhaust administrative remedies was not a basis for preventing Heggie from pursuing his claim that the moving defendants failed to provide him with necessary medical care from May 20 through June 20, 2006. *See Heggie v. MDOC & CMS et al.*, 2009 WL 36612, *2-5 (W.D. Mich. Jan. 5, 2009) (Maloney, C.J.) ("*Heggie* I"). The court remanded to the Magistrate Judge, however, for consideration of the defendants' FED. R. CIV. P. 12(b)(6) motion to dismiss for failure to state a claim on which relief can be granted as to the merits of his Eighth Amendment / 42 U.S.C. § 1983 and Americans with Disabilities Act ("ADA") claims. *Heggie I*, 2009 WL 36612 at *6.

On January 23, 2009, the Magistrate Judge issued the second R&R in this case, recommending that the court grant in part and deny in part the motion to dismiss filed by the CMS defendants, and grant in part and deny in part the motion for summary judgment filed by the MDOC defendants. Heggie makes clear that he "does not object to the entire R&R but more specifically" the recommendations regarding four individual defendants (Heebsh, Kim & Spitters, and

3

Brecheisen).  *See* Heggie's Objections to Second R&R ("P's Objections") at 1 ¶ 4.

**Where neither party has objected to a portion of the R&R, the court will adopt that portion of the R&R without review.**  *See Lopez v. SSA*, 2009 WL 261191, *2 (W.D. Mich. Feb. 4, 2009) (Paul L. Maloney, C.J.) ("[T]he failure to file timely specific objections obviates not only *de novo* district judge review of the R&R, but *all* district judge review.") (citing *Thomas v. Arn*, 470 U.S. 140, 141-42 and 149-50 (1985)); *see, e.g., Russell v. Caruso*, 2007 WL 3232126, *2 n.3 (W.D. Mich. 2007) (Maloney, J.) ("Because neither party filed timely objections to [the] Report and Recommendation, this court need not conduct a review."); *Tangwall v. Robb*, 2003 WL 23142190, *1 (E.D. Mich. 2003) (Lawson, J.) ("[T]he failure to object to the Magistrate Judge's report releases the court from its duty to independently review the motion.").

**First, Heggie does not object to the premise that his complaint fails to state a claim against CMS** because he has not alleged any wrongdoing by CMS, and it cannot be held vicariously liable under section 1983 for the actions of its employees unless Heggie shows that it had a policy, practice or custom that caused the injurious conduct, which he has not alleged.  *See* R&R at 6-7; *see also Beverly v. Dutcher*, 2009 WL 104286, *___ (W.D. Mich. Jan. 14, 2009) (Maloney, C.J.) ("[L]iability in a § 1983 action cannot be based upon a theory of respondeat superior or vicarious liability . . . . '[L]iability must lie upon more than a mere right to control employees and cannot rely on simple negligence.'") (quoting *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006)); *Southall v. City of Grand Rapids*, 2008 WL 4739163, *3 (W.D. Mich. Oct. 29, 2008) (Maloney, C.J.) ("a municipality may not be held vicariously liable under 42 U.S.C. section 1983 merely for the alleged constitutional violations or torts of its employees.") (citing *Garretson v. City of Madison Hts.*, 407 F.3d 789, 795 (6th Cir. 2005)).  The complaint will accordingly be dismissed as to CMS.

**Second, the Magistrate correctly suggests that Heggie *has* stated an Eighth Amendment cruel-and-unusual-punishment claim on which relief could be granted against MDOC employee Dr. Kuzma, M.D.** The Magistrate properly applied the two-prong test which applies to a prisoner's claim that a prison employee violated his Eighth Amendment rights by exhibiting deliberate indifference to the prisoner's serious medical needs. *See* R&R at 7-8. The Magistrate assumed *arguendo*, as does this court, that Heggie satisfies the first prong, which requires an objective showing that the denial of medical care posed a substantial risk of serious harm. *See* R&R at 8; *see also Perez v. Oakland Cty.*, 466 F.3d 416, 423-24 (6th Cir. 2006) (Cudahy, J., with Griffin & Moore, JJ., concurring separately in pertinent part, and Moore, J., dissenting in part on other grounds) (discussing objective prong and defining when a medical need is "serious") (citations omitted).

This court also agrees that Heggie satisfies the second prong, which requires a showing that Dr. Kuzma actually subjectively knew that Heggie faced a substantial risk of serious harm if not given proper medical treatment and disregarded that risk by failing to take reasonable measures to ameliorate it. *See* R&R at 8.[1] The Magistrate was careful to note that mere negligence by Dr. Kuzma is not actionable under the Eighth Amendment, R&R at 8. *See also Baker v. Vanderark*, 2008 WL 2788528, *7 (W.D. Mich. July 17, 2008) (Maloney, J.) ("[T]o the extent that Plaintiff

---

[1] *Contrast Hoye v. Nelson*, 2009 WL 81115, *2 (W.D. Mich. Jan. 8, 2009) (Maloney, C.J.) (granting summary judgment to defendant Tudor on § 1983 Eighth Amendment claim) ("Plaintiff has failed to create any genuine issue of material fact on the subjective prong of the test for deliberate indifference to medical needs. * * * Consistent with [defendant] Tudor's affidavit, nothing in Plaintiff's prison medical file indicates any restriction on his ability to bend, twist, walk, stand, or perform overhead work. Plaintiff may indeed have a bad back, [but] that alone is insufficient to create a genuine issue of material fact with regard to whether Defendant Tudor knew of an disregarded, or could infer, an excessive risk to Plaintiff's health.") (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

merely disagrees with the treatment he received, or asserts that he received negligent care, Defendants are entitled to summary judgment.") (citing, *inter alia*, *Perez.*, 466 F.3d at 423); *see, e.g., Thomas v. Webb*, 39 F. App'x 255 (6th Cir. 2002) (Boggs, Batchelder, D.J. Steeh) (where prisoner's kidney stone was treated with pain relieving and calcium-reducing drugs, his claim that he should have been prescribed stronger medications for the kidney stone and for his stress disorder, sounded merely in negligence).

But the Magistrate correctly suggested that this record would enable a reasonable jury to find that Kuzma was deliberately indifferent to Heggie's known serious medical needs. *See* R&R at 9. This is so because Heggie need not prove that Kuzma "acted or failed to act believing that harm would actually befall [Heggie] . . . ; it is enough [for Heggie to show] that [Kuzma] acted or failed to act despite his knowledge of a substantial risk of serious harm." *LeMarbe v. Wisneski*, 266 F.3d 429, 436 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 842). The record would also support, but *not* compel, the contrary finding, i.e., that Kuzma was *not* deliberately indifferent to Heggie's known serious medical needs. If this court were to declare as a matter of law that Kuzma was *not* deliberately indifferent to Heggie's known serious medical needs, it would contravene the rule that a court ruling on a Rule 12(b)(6) motion must read a *pro se* complaint indulgently, *Riley v. Fritz*, 2009 WL 395785, *1 (W.D. Mich. Feb. 13, 2009) (Maloney, C.J.) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)), and "must . . . accept Plaintiff's allegations are true, unless they are clearly irrational or wholly incredible," *Riley*, 2009 WL 395785 at *1 (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). A reasonable jury might find that Heggie's case against Kuzma is weak, but Heggie has alleged enough to raise his right to relief against Kuzma "'above the speculative level'" rather than merely creating the "'suspicion of a cognizable cause of action.'" *Rishell v. Standard Life Ins.*

6

*Co.*, 2009 WL 395884, *3 (W.D. Mich. Feb. 13, 2009) (Maloney, C.J.) (quoting *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citing *Twombley*, 550 U.S. at __, 127 S.Ct. at 1974))) (footnote 3 omitted).

**Heggie objects to the recommendation that the complaint be dismissed as to defendant Heebsh as to her decision to order X-rays instead of the MRI that she allegedly promised Heggie.** *See* Heggie's Objections at unnumbered pages 2-3. The Magistrate correctly suggested that Heggie has stated merely a disagreement with Heebsh's decision about the type of treatment, which sounds in negligence and medical malpractice instead of an Eighth Amendment Cruel and Unusual Punishment claim. *See* R&R at 10-11. Heggie speculates that perhaps Heebsh "was confussed [sic] and pos[s]ibly even ordered a[n] M.R.I. for another inmate who needed chest x-rays . . .", *see* Heggie's Objections at unnumbered page 2, but such an error would be mere negligence and not *deliberate* indifference. *See Howard v. Purkey*, 2008 WL 351208, *2 (E.D. Tenn. Feb. 6, 2008) ("Nurse Linda Brooks . . . dispensed him someone else's medications, which caused him to think he might have a heart attack. Actually, defendant Bullington is responsible for the mix-up since he was the one who gave out the medications. * * * These contentions state a colorable Eighth Amendment] claim against defendant Nurse Brooks, but not against defendant Bullington, since all that is claimed on his part is, in essence, medical malpractice.") (citing *Estelle*, 429 U.S. at 104 and 106); *Rumsey v. MDOC*, 327 F. Supp.2d 767, 777 (E.D. Mich. 2004) (granting summary judgment to defendants on § 1983 Eighth Amendment and other claims; "The allegations surrounding the alleged mix-up of Plaintiff's prescriptions . . . shows [sic] nothing more than negligence, if that.").[2]

---

[2] The court rejects any suggestion that it has "act[ed] as an advocate" for Heggie because he is a *pro se* litigant, *see* CMS Defendants' Response to P's Objections [doc. #99] at 10 ("[T]he court is prohibited from acting as an advocate for *pro se* litigants.") (citing *Berridge v. Heiser*, 993 F.

**Heggie next objects to the recommendation that the complaint be dismissed as to defendants Dr. Kim and Physician's Assistant Spitters with regard to his allegation that they knew the extent of his pain, knew that the course of treatment was largely ineffective, and refused to do anything about it.** Heggie contends,

> Plaintiff . . . was forced to suffer extreme nerve pain in the lumbar area of his back for well over a year[']s time, during which the Plaintiff sent several health care kites [notes] requesting treatment and or relief, in all Defendants Kim and Spitters neglected and or denied to [provide the plaintiff with any relief from such pain . . . demonstrat[ing] deliberate indifference to 'serious' medical needs.

Heggie's Objections at unnumbered pages 3-4 (citing *Hathaway v. Coughlin*, 37 F.3d 63 (2d Cir. 1995) for the proposition that when a prisoner repeatedly complains of severe pain, defendant physicians' frequent examinations of the prisoner did not preclude a finding of deliberate indifference, because the physicians knew that the existing treatment was largely not working but refused to do anything more to try to improve his situation, and *Borretti v. Wiscomb*, 930 F.2d 1150, 1154-55 (6th Cir. 1991) for the proposition that a prisoner who suffers pain needlessly when relief is readily available may have a cause of action against those whose deliberate indifference is the cause of his continued suffering). The R&R correctly noted that unlike some of Heggie's other claims – such as the claim that PA Spitters made *no* attempt to ascertain the cause of his persistent back pain – his claim that Dr. Kim and PA Spitters is not that they did not render or recommend *any* treatment, but merely that the treatment they rendered or recommended was ineffective and they should have taken additional or different action to remedy his conditions. R&R at 12. The Magistrate's conclusion is consistent with the principle that

> "differences in judgment between an inmate and prison medical personnel regarding

---

Supp. 1136, 1141 (S.D. Ohio 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991))).

>the appropriate medical diagnoses or treatment are insufficient to state a deliberate indifference claim." *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995). The Sixth Circuit distinguishes between "cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment."

*Cox v. CMS*, 2007 WL 2873208, *4 (E.D. Mich. Feb. 20, 2007) (Charles Binder, M.J.) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)), *R&R adopted in pertinent part*, 2007 WL 287059 (E.D. Mich. Sept. 26, 2007) (David Lawson, D.J.).

Where, as with Heggie's treatment by Dr. Kim and PA Spitters, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are properly reluctant to second-guess medical judgments and to constitutionalize claims which sound in state tort law." *Cox*, 2007 WL 2873208 at *4 (citing *Westlake*, 537 F.2d at 860 n.5, and *Jones v. Martin*, 5 F. App'x 434 (6th Cir. 2001)). With the exception noted by the R&R, Heggie has not provided enough for a reasonable factfinder to find that Dr. Kim or PA Spitters's provision/recommendation of allegedly inadequate treatment evinced a subjective disregard of a known substantial risk of serious harm. *Cf. Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007) (Richard Allen Griffin, J.) (despite prisoner's complaint that there was no documentation proving that Nurse Shubnell cleaned an infected area of his foot or "took the vital signs to assess if there [wa]s a systemic infection at that point", the care was not so grossly inadequate that the court would depart from the rule that differences about the nature and extent of treatment, rather than a complete denial of treatment, generally do not constitute an Eighth Amendment deliberate-indifference violation, and there was no genuine issue as to whether the nurse inferred that a very small (3 millimeter) red area at the base of one toe posed a substantial risk of serious harm if she did not provide or request more examination or treatment).

**Finally, Heggie objects to the recommendation that the complaint be dismissed as to defendant Brecheisen.** Heggie objects as follows:

> [The complaint] at 10 states that once the Plaintiff became aware that he was being placed on a top bunk area he informed resident unit officer Brecheisen that he required a bottom bunk because he, the Plaintiff[,] has seizures. (RUO) Brecheisen told the Plaintiff to place his belongings in the unassigned area and that he would call health services and find out if he should move the Plaintiff to a bottom bunk.
>
> Defendant Brecheisen told the Plaintiff to place his belongings in his assigned area, after having objective and constructive knowledge that the Plaintiff suffered from a seizure disorder, the defendant knew or should have known that this would or was exposing the Plaintiff to an excessive risk to his personal health and or saftey [sic].
>
> * * *
>
> [T]his same defendant could have easily moved the plaintiff to a bottom bunk ([Complaint] at 31) and or made more attempts to do so, in all he the defendant failed to take easily available measures to address the risk, but instead this defendant forced the plaintiff to lock [sic] on a top bunk.
>
> Therefor[e] it should be clear to this court that Defendant Brecheisen violated the Plaintiff[']s rights, and that the claims . . . should not be dismissed.

Heggie's Objections at unnumbered pages 4-5. It is undisputed, however, that after Officer Brecheisen promised Heggie that he would call health services about his bunk assignment, he did in fact make "several phone calls" to Health Services "over the next couple of days", and he informed the assistant resident unit supervisor about Heggie's concern and request as well. As a matter of law, the Magistrate is correct that Officer Brecheisen's apparent failure to do even more, and follow up when Health Services allegedly failed to carry through on their promise to "look into it", may have been negligent, but it does not rise to the level of deliberate indifference in light of what he did do in immediate response to Heggie's complaint. *See* R&R at 16-17.

**Heggie has not objected to the portions of the R&R suggesting that** any ADA claims against the CMS defendants fail to state a claim on which relief can be granted, *see* R&R at 13-14; that MDOC must be dismissed because it is not a "person" under 42 U.S.C. § 1983 and because it

has Eleventh Amendment immunity, *see* R&R at 14-15; that defendants Lange and Whalen are entitled to summary judgment because Heggie's complaint does not allege facts which could establish their personal involvement in the events giving rise to this action, *see* R&R at 18-19; that defendants Leas, Meyer and Cooper should be dismissed without prejudice due to Heggie's expression of willingness to drop those claims, *see* R&R at 19-20; that defendant Hamilton is entitled to summary judgment because Heggie's complaint does not allege facts which could establish her personal involvement in the events giving rise to this action, see R&R at 21-22; that Eleventh Amendment immunity bars Heggie's claims for monetary relief (money damages) from any of the MDOC defendants in their official capacities, *see* R&R at 22-23; and that putative defendants "Unknown Turner" and "Unknown John and Jane Does" be dismissed without prejudice pursuant to FED. R. CIV. P. 4(m) for failure to effect service of process, *see* R&R at 23-24 and *Beverly v. Dutcher*, 2009 WL 104286, *3 (W.D. Mich. Jan. 14, 2009) (Maloney, C.J.) ("Rule 4(m) . . . provides that if service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, 'the court upon motion or on its own initiative after notice to the plaintiff, *shall* dismiss the action without prejudice as to that defendant.'").[3]

---

[3]

Rule 4(m)'s use of the word "shall" leaves the court no discretion; "the word 'shall' always means that the action in question is mandatory, not optional." *CMS North America, Inc. v. DeLorenzo Marble & Tile, Inc.*, 521 F. Supp.2d 619, 621 (W.D. Mich. 2007) (Maloney, J.) (citing, *inter alia*, *US v. Jones*, 495 F.3d 274, 277 (6th Cir. 2007) (Ryan, Griffin, D.J. Hood)).

*See, e.g., Metro. Life Ins. Co. v. Mason*, 2009 WL 261215, *1 (W.D. Mich. Feb. 4, 2009) (Maloney, C.J.) ("Parties . . . were dismissed without prejudice for failure to timely file a proof of service regarding the summons and complaint on each."); *Bristow v. Ameriquest Ins. Co.*, 2008 WL 1986233, *2 (W.D. Mich. May 2, 2008) (Bell, C.J.) (where plaintiff failed to show that failure to serve defendants during the 120-day period was not due to his fault or the fault of his counsel, court dismissed complaint without prejudice); *Lazarus v. Eisen*, 2008 WL 5411900 (W.D. Mich. Dec. 23, 2008) (Miles, J.); *Moore v. Cycon Enters., Inc.*, 2006 WL 2375477, *1 (W.D. Mich. Aug. 16, 2006) (Quist, J.); *Fitzpatrick v. Williams*, 2007 WL 2077733 (W.D. Mich. July 18, 2007) (Enslen, J.).

**Conversely, the defendants have not objected to the Magistrate's suggestion that** the claims against defendant Hobbs survive summary judgment, *see* R&R at 15-16.

**ORDER**

Accordingly, having reviewed the complaint, the answer, the Rule 12(b)(6) motion to dismiss and the parties' briefs thereon [documents #52, 65 and 72], the defendants' motion for summary judgment and the parties' briefs thereon [documents #41, 46, 47 and 48], the R&R, the plaintiff's objections and the CMS defendants' response thereto and the plaintiff's reply [documents #97, 99 and 101], and the CMS defendants' objections to the R&R [document #98]:

The plaintiffs' objections [document #97] are **OVERRULED**.

The CMS defendants' objections [document #98] are **OVERRULED**.

The R&R [document #92] is **ADOPTED**.

The motion to dismiss filed by defendants CMS, Dr. Kuzma, Dr. Kim, PA Heebsh, and PA Spitters **[document #41] is GRANTED in part and DENIED in part**, as follows:

Without objection, the complaint is **DISMISSED as to defendant CMS with prejudice.**

Kuzma's motion to dismiss is **DENIED**.

The complaint is **DISMISSED as to defendant Heebsh except for the claim that** Heebsh failed to properly treat plaintiff's "extreme back pain and discomfort, headaches, and dizzy spells."

The complaint is **DISMISSED as to defendant Kim except for the claim that** Kim failed to conduct appropriate medical tests and treatment for "Plaintiff's chronic back pain . . . headaches, dizzy spells, and many other neurological problems."

The complaint is **DISMISSED as to defendant Spitters except for the claim that** Spitters

failed to make any attempt to find the cause of his back pain and failed to provide appropriate medical tests and treatment for "Plaintiff's chronic back pain . . . headaches, dizzy spells, and many other neurological problems."

The motion for summary judgment filed by defendants MDOC, Lange, Hobbs, Leas, Meyer, Hamilton, Cooper, Whalen and Brecheisen **[document #51] is GRANTED in part and DENIED in part**, as follows:

The complaint is dismissed with prejudice as to **Defendant MDOC**.

The complaint is dismissed with prejudice as to **Defendant Brecheisen.**

The complaint is dismissed with prejudice as to **Defendant Lange.**

The complaint is dismissed with prejudice as to **Defendant Whalen.**

The complaint is dismissed with prejudice as to **Defendant Hamilton.**

The complaint is dismissed *without* prejudice as to **Defendant Leas.**

The complaint is dismissed *without* prejudice as to **Defendant Meyer.**

The complaint is dismissed *without* prejudice as to **Defendant Cooper.**

The complaint is dismissed *without* prejudice as to **would-be Defendants "Unknown Turner" and "Unknown John and Jane Does"** for failure to effect service.

**Defendant Hobbs**'s motion for summary judgment is denied.

**Claims for monetary damages** against defendants Hobbs, Brecheisen, Lange, Whalen, Leas, Meyer, Cooper and Hamilton in their official capacity are **DISMISSED**.

**The following five defendants remain in the case:**

–   Dr. George Kuzma, M.D.
–   P.A. Heebsh
–   R.N. "Unknown Hobbs"
–   Dr. Jason Y. Kim, M.D.

– P.A. Spitters

This is <u>not</u> a final order.

**IT IS SO ORDERED this 6th day of March 2009.**

<u>/s/ Paul L. Maloney</u><br>
Honorable Paul L. Maloney<br>
Chief United States District Judge