UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


GLENN HEGGIE,

        Plaintiff,                       Hon. Paul L. Maloney

v.                                                   Case No. 1:07 CV 1024

MICHIGAN DEPARTMENT
OF CORRECTIONS, et al.,

        Defendants.
_____/


## REPORT AND RECOMMENDATION

        This matter is before the Court on Defendants Kuzma, Heebsh, Kim, and Spitters' Motion for Summary Judgment, (dkt. #129), and Defendant Hobbs' Motion for Summary Judgment, (dkt. #131). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motions both be **granted** and Plaintiff's action **dismissed**.


## BACKGROUND

        The following allegations are contained in Plaintiff's complaint. On or about March 1, 2006, Plaintiff arrived at the Michigan Department of Corrections Receiving and Guidance Center, in Jackson, Michigan, to begin serving his sentence. Upon his arrival, Plaintiff informed medical personnel that he had begun to suffer seizures "in the last several months." Plaintiff was given a bottom bunk and instructed to request a bottom bunk "when he transferred to another facility."

        On or about April 5, 2006, Plaintiff was transferred to the Lakeland Correctional Facility (LCF). Upon his arrival at LCF, Plaintiff was examined by Defendant Hobbs. Plaintiff informed Hobbs

"that he needed a bottom bunk because he has seizures." After reviewing Plaintiff's medical records, Hobbs "made arrangements and a bottom bunk was issued to" Plaintiff.

The following day, however, Plaintiff was moved to a different housing unit within LCF where he was assigned a top bunk. Plaintiff reported to Defendant Brecheisen that he required a bottom bunk because he suffers seizures. Brecheisen told Plaintiff that "he would call health service" about the matter. Over the "next couple of days," Brecheisen made "several phone calls" to LCF health services, which informed Brecheisen that "they will look into it and call back." Health services never called back and Plaintiff was forced to sleep in a top bunk.

On or about May 20, 2006, Plaintiff suffered a seizure and fell out of his top bunk, injuring his head, neck, and back. Plaintiff was taken to a hospital where x-rays were taken. After returning to LCF, he was examined by Defendants Hobbs and Heebsh. Defendant Heebsh observed that Plaintiff's eyes "were extremely dilated," a sign of head trauma. Heebsh told Plaintiff that she would order an MRI examination. However, rather than order an MRI examination, Defendant Heebsh "ordered chest x-rays."

For "the next month or so," Plaintiff "complained to several (LCF) health service staff members" (including Defendants Kuzma, Hobbs, Heebsh, and Leas) that he was experiencing "extreme back pain and discomfort, head aches, and dizzy spells." Despite his numerous requests to obtain medical treatment, "(LCF) health service" refused to provide Plaintiff "with any further exams to find the cause of his pain and suffering." Health service also failed to provide Plaintiff with "any effective relief" from his pain. At an unspecified date, Plaintiff participated in a urine test, the results of which revealed the presence of blood. Defendant Kuzma informed Plaintiff that such could have resulted from injuries suffered in his May 20, 2006 fall out of bed.

On or about June 19, 2006, Plaintiff was transferred to the Muskegon Correctional Facility (MCF). After arriving at MCF, Plaintiff complained to "(MCF) health service" (including Defendants Kim, Meyer, Hamilton, Cooper, and Spitters) that he was experiencing "chronic and persistent back pain," as well as "headaches, dizzy spells and many other neurological problems to the extent that at times the plaintiff would sometimes briefly forget who and where he was." Despite his many complaints, "(MCF) health service" has refused to treat Plaintiff's pain or provide him with any medical testing. Plaintiff asserts that as a result of falling out of bed on May 20, 2006, he has suffered permanent neurological damage.

Plaintiff initiated this action on October 10, 2007, against number individuals, as well as the Michigan Department of Corrections (MDOC) and Correctional Medical Services (CMS). Plaintiff alleges that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. Simply put, Plaintiff asserts that after suffering a seizure and falling from his bed on May 20, 2006, Defendants have not provided him with appropriate medical treatment. Plaintiff seeks declaratory, injunctive, and monetary relief.

Most of the claims asserted in Plaintiff's complaint have since been dismissed. (Dkt. #101). Specifically, the only claims remaining in this matter are the following: (1) Plaintiff's claims against Defendant Kuzma; (2) Plaintiff's claim that Defendant Heebsh failed to properly treat Plaintiff's extreme back pain and discomfort, headaches, and dizzy spells; (3) Plaintiff's claim that Defendant Kim failed to conduct appropriate tests and medical treatment for Plaintiff's chronic back pain, headaches, dizzy spells, and many other neurological problems; (4) Plaintiff's claim that Defendant Spitters failed to make any attempt to find the cause of Plaintiff's back pain and failed to provide appropriate medical tests and treatment for Plaintiff's chronic back pain, headaches, dizzy spells, and many other

neurological problems; and (5) Plaintiff's claims against Defendant Hobbs. (Dkt. #101). The Court further notes that with respect to Plaintiff's claims against Defendants Kuzma, Heebsh, Kim, and Spitters, Plaintiff has properly exhausted his administrative remedies only as to the time period from May 20, 2006, through November 26, 2006. (Dkt. #85, 88). Defendants Kuzma, Heebsh, Kim, Spitters, and Hobbs now move for summary judgment as to Plaintiff's remaining claims.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party has met its burden of production, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the nonmoving

party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to

hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.        Medical Evidence**

In support of their motion for summary judgment, Defendants have submitted copies of Plaintiff's medical records. (Dkt. #129, Exhibit B; Dkt. #132, Exhibit A, Attachment B). Plaintiff has not asserted that Defendants' submission in this regard is in any way deficient or incomplete. Furthermore, Plaintiff has failed to submit any evidence (medical records or otherwise) in response to Defendants' motion for summary judgment. The medical records submitted by Defendants reveal the following.

Plaintiff was examined by Defendant Hobbs on May 20, 2006. Plaintiff reported that he had fallen out of his bed after experiencing a seizure. Plaintiff walked with a "steady" gait and exhibited "good" range of motion "from head to toe." An examination of Plaintiff's head revealed "no lumps or

bruises." The results of a neurological examination were "normal." X-rays of Plaintiff's chest revealed "no abnormality." X-rays of Plaintiff's thoracic spine revealed "no identifiable pathology." X-rays of Plaintiff's cervical spine revealed "no abnormality." Plaintiff was prescribed pain medication and given a bottom bunk accommodation.

On May 23, 2006, Plaintiff was examined by Defendant Heebsh. Plaintiff reported that he was experiencing "some mid-thoracic back pain, but denie[d] any recent change in his usual functional capacity." Defendant observed that Plaintiff "was stooped forward" when he entered the clinic, but that he subsequently walked "from the health care building to his unit with good posture and a purposeful gait." The results of this examination were unremarkable. Plaintiff was prescribed medication and scheduled for various follow-up tests and laboratory evaluations. Defendant Heebsh also reiterated that Plaintiff be afforded a bottom bunk accommodation. On May 26, 2006, Defendant Heebsh cancelled an appointment for Plaintiff to undergo another chest x-ray.

Plaintiff subsequently participated in various medical tests, the results of which revealed "several lab abnormalities." As a result, Plaintiff was examined by Defendant Kuzma on June 15, 2006. Plaintiff registered no complaints of pain or other limitation. The doctor diagnosed Plaintiff with: (1) mild hypothyroidism; (2) microscopic hematuria; (3) trace of glycosuria; and (4) mildly elevated cholesterol, for which Plaintiff was prescribed medication.

On June 27, 2006, Plaintiff was examined by Defendant Spitters. Plaintiff reported that he fell out of his bed approximately one month previous. Plaintiff reported that he was not experiencing any "real pain," but that he was merely "uncomfortable." The results of a neurological examination revealed no evidence of abnormality or limitation and Plaintiff exhibited normal strength, gait, and sensory function.

On August 28, 2006, Plaintiff reported to a nurse that he was "feeling like he is going to have a seizure." The nurse noted that Plaintiff "has not been showing for his [seizure] medication in the morning." Treatment notes dated September 4, 2006, indicate that Plaintiff had failed three times to report for his seizure medication.

On September 27, 2006, Plaintiff was examined by Defendant Kim. Plaintiff reported experiencing no pain, muscle weakness, or loss of coordination. Plaintiff exhibited normal strength with no evidence of neurological abnormality. Laboratory testing revealed that Plaintiff's "blood levels of anti-seizure medications" were "low."

On October 26, 2007, Plaintiff was examined by Defendant LaNore. Plaintiff reported that he was experiencing "back pains." Plaintiff exhibited normal strength and Romberg testing[1] was negative. Plaintiff walked with a normal gait and exhibited no evidence of neurological abnormality. X-rays of Plaintiff's lumbar spine, taken on November 2, 2007, were "normal" with "no evidence of fracture, dislocation or other gross osseous or articular abnormalities."

**II.      Defendant Kuzma**

Plaintiff asserts that he "complained to several (LCF) health service staff members," including Defendant Kuzma that he was "suffering from extreme back pain and discomfort, head aches, and dizzy spells." (Dkt. #1 at ¶ 19). Plaintiff asserts that "(LCF) health service neglected to provide the plaintiff with any further exams to find the cause of his pain and suffering." Plaintiff further asserts that "(LCF) health service neglected to provide the plaintiff with any effective relief from such pain,

---

[1] Romberg test is a neurological test designed to detect poor balance. *See* Romberg Test, available at http://www.mult-sclerosis.org/RombergTest.html (last visited on February 22, 2010). The patient stands with his feet together and eyes closed. The examiner will then push him slightly to determine whether he is able to compensate and regain his posture. *Id.*

forcing the plaintiff to suffer pain amounting to 'unnecessary and wanton infliction of pain' needlessly when relief was readily available." *Id.* Plaintiff asserts that Defendant's conduct constitutes "deliberate indifference" to his medical needs in violation of the Eighth Amendment. (Dkt. #1 at ¶¶ 30-31).

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The analysis by which an official's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation is sufficiently serious. In this respect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. If the objective test is met, the Court must then determine whether the official possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, Plaintiff must establish that the official "actually knew" that he "faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to

abate it." *Howard v. Calhoun County*, 148 F.Supp.2d 883, 888-89 (W.D. Mich. 2001) (citing *Farmer*, 511 U.S. at 847).

To the extent, however, that Plaintiff merely disagrees with the treatment he received, or asserts that he received negligent care, such fails to implicate the Eighth Amendment. *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995) (if prison officials responded reasonably to a substantial risk to an inmate's health or safety, they may avoid liability – even if the harm ultimately was not averted).

The medical evidence submitted by Defendants reveals that Defendant Kuzma examined Plaintiff on June 15, 2006, to evaluate certain "lab abnormalities." (Dkt. #129, Exhibit B at 297). The doctor's treatment notes do not reveal that Plaintiff reported experiencing any pain or other symptomatology. Defendant Kuzma assessed Plaintiff's "lab abnormalities" and prescribed medication to treat such. *Id.* This evidence refutes Plaintiff's claim that Defendant Kuzma denied him medical treatment. Plaintiff has not asserted that the medical evidence submitted by Defendants is in any way deficient, inaccurate, or incomplete. Plaintiff has also failed to submit any evidence in response to Defendant Kuzma's motion for summary judgment. Instead, Plaintiff merely relies on the unsworn assertions contained in his complaint. Accordingly, the undersigned recommends that Defendant Kuzma is entitled to summary judgment.

**II.     Defendant Heebsh**

Plaintiff asserts that Defendant Heebsh failed to properly treat his extreme back pain and discomfort, headaches, and dizzy spells. The medical records submitted by Defendant Heebsh indicate that she examined Plaintiff on May 23, 2006. Plaintiff walked into the clinic "stooped forward" and reported that he was experiencing "some mid-thoracic back pain." However, the results of the examination were unremarkable and Plaintiff denied that he had experienced "any recent change in his usual functional capacity." Moreover, Defendant Heebsh reported that Plaintiff exited the clinic walking with "good posture and a purposeful gait." Plaintiff was prescribed medication and scheduled for various follow-up tests and laboratory evaluations. Three days later, Defendant Heebsh cancelled an appointment for Plaintiff to undergo another chest x-ray. This was likely due to the fact that Plaintiff had undergone a chest x-ray on May 20, 2006, which revealed no evidence of abnormality.

The evidence submitted by Defendants refutes Plaintiff's claim that Defendant Heebsh failed to properly treat Plaintiff's back pain. While Plaintiff alleges in his complaint that he was suffering extreme back pain and discomfort, headaches, and dizzy spells, such is contradicted by the medical evidence submitted by Defendants. Plaintiff has not asserted that this medical evidence is in any way deficient, inaccurate, or incomplete. Plaintiff has also failed to submit any evidence in response to Defendant Heebsh's motion for summary judgment. Instead, Plaintiff merely relies on the unsworn assertions contained in his complaint. Accordingly, the undersigned recommends that Defendant Heebsh is entitled to summary judgment.

**III.      Defendant Kim**

Plaintiff asserts that Defendant Kim failed to conduct appropriate tests and medical treatment for his chronic back pain, headaches, dizzy spells, and many other neurological problems. The medical records submitted by Defendant Kim reveal that during the relevant time period he examined Plaintiff on a single occasion, September 27, 2006. Defendant's treatment notes indicate that Plaintiff reported experiencing no pain, muscle weakness, or loss of coordination. Plaintiff exhibited normal strength with no evidence of neurological abnormality. Laboratory testing revealed that Plaintiff's "blood levels of anti-seizure medications" were "low."

Plaintiff's claim that he was suffering from chronic back pain, headaches, dizzy spells, and many other neurological problems is contradicted by Defendant Kim's treatment notes, as well as the medical evidence predating Defendant's examination of Plaintiff. The medical evidence refutes Plaintiff's claim that Defendant Kim failed to provide Plaintiff with appropriate medical treatment. Plaintiff has not asserted that the medical evidence submitted by Defendants is in any way deficient, inaccurate, or incomplete. Plaintiff has also failed to submit any evidence in response to Defendant Kim's motion for summary judgment. Instead, Plaintiff merely relies on the unsworn assertions contained in his complaint. Accordingly, the undersigned recommends that Defendant Kim is entitled to summary judgment.

**IV.      Defendant Spitters**

Plaintiff claims that Defendant Spitters failed to make any attempt to find the cause of Plaintiff's back pain and failed to provide appropriate medical tests and treatment for his chronic back pain, headaches, dizzy spells, and many other neurological problems.

The medical records submitted by Defendants reveal that during the relevant time period Defendant Spitters examined Plaintiff only once, on June 27, 2006. Plaintiff reported that he was not experiencing any "real pain," but that he was merely "uncomfortable." The results of a neurological examination revealed no evidence of abnormality or limitation and Plaintiff exhibited normal strength, gait, and sensory function.

Plaintiff's claim that he was suffering back pain is contradicted by the medical record. As for Plaintiff's claim that Defendant Spitters failed to properly treat his chronic back pain, headaches, dizzy spells, and many other neurological problems, the medical record fails to establish that Plaintiff was experiencing any such symptoms. In short, the medical evidence submitted by Defendants refutes Plaintiff's claims. Plaintiff has not asserted that this medical evidence is in any way deficient, inaccurate, or incomplete. Plaintiff has also failed to submit any evidence in response to Defendant Spitters' motion for summary judgment, but instead has merely reasserted the unsworn allegations contained in his complaint. The undersigned recommends, therefore, that Defendant Spitters is entitled to summary judgment.

### V.      Defendant Hobbs

Plaintiff asserts that "for the next month or so" following his May 20, 2006 injury, he "complained to several (LCF) health service staff members," one of whom was Defendant Hobbs, that he was suffering "extreme back pain and discomfort, head aches, and dizzy spells." (Dkt. #1 at ¶ 19). According to Plaintiff, despite his many complaints, "(LCF) health service" failed to provide him with adequate medical care. *Id.* Plaintiff asserts that Defendant's conduct constitutes "deliberate indifference" to his medical needs in violation of the Eighth Amendment.

The medical records submitted by Defendants fail to demonstrate that Plaintiff, following his May 20, 2006, injury, suffered "extreme back pain and discomfort, head aches, and dizzy spells." The evidence submitted by Defendants instead reveals that Plaintiff was experiencing minimal symptoms for which he received appropriate medical care. Plaintiff has not asserted that the medical evidence submitted by Defendants is in any way deficient, inaccurate, or incomplete. Plaintiff has also failed to submit any evidence in response to Defendant Hobbs' motion for summary judgment. Plaintiff instead merely reasserts the unsworn allegations contained in his complaint. The undersigned recommends, therefore, that Defendant Hobbs is entitled to summary judgment.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that Defendants Kuzma, Heebsh, Kim, and Spitters' Motion for Summary Judgment, (dkt. #129), be **granted**; Defendant Hobbs' Motion for Summary Judgment, (dkt. #131), be **granted**; and Plaintiff's action **dismissed**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                                                Respectfully submitted,

Date: March 10, 2010                      /s/ Ellen S. Carmody
                                                ELLEN S. CARMODY
                                                United States Magistrate Judge